**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| LOIS JEAN HUFFMAN, | ) | No. CV 15-2210-PLA |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 25, 2015, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on May 5, 2015, and December 10, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 7, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on July 31, 1949. [Administrative Record ("AR") at 38, 144.]  She has past relevant work experience as a financial solutions coach, senior marketing executive, sales marketing support manager, and sales representative.  [AR at 22 (citation omitted).]

On December 14, 2012, plaintiff protectively filed an application for a period of disability and DIB, alleging that she has been unable to work since August 30, 2010. [AR at 13, 144.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 13, 98.]  A hearing was held on July 23, 2014, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 13, 28-63.] After the hearing, the ALJ determined that he needed the opinion of an impartial medical expert and propounded interrogatories on Paul Grodan, M.D. [AR at 13, 225-30, 884-97.]  On September 15, 2014, the ALJ proffered Dr. Grodan's responses to plaintiff, advising that she could "comment on the answers to the interrogatories, submit more evidence, ask [the ALJ] to submit cross interrogatories to the expert, and request a supplemental hearing." [AR at 13, 231.]  Plaintiff did not provide a response. [AR at 13.]  On October 17, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from August 30, 2010, the alleged onset date, through October 17, 2014, the date of the decision. [AR at 13-23.]  Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 5-8.]  When the Appeals Council denied plaintiff's request for review on January 21, 2015 [AR at 1-3], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Ryan, 528 F.3d at 1198 (citation and quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  Id.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 30, 2010, the alleged onset date.[1]  [AR at 15.]  At step two, the ALJ concluded that plaintiff has the following "medically determinable conditions of ill-being":

---

[1]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through June 30, 2015.  [AR at 15.]

4

[A] history of congestive heart failure and rheumatic heart disease[;] a history of mitral valve replacement procedure[;] tricuspid valve annuloplasty[;] paroxysmal supraventricular tachycardia[;] Eisenmenger Syndrome[;] chronic obstructive pulmonary disease (COPD)[;] pulmonary hypertension[;] asthma[;] and osteopenia.

[AR at 16 (citations omitted).]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.  [Id.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[3] as follows:

[T]he claimant can lift, carry, push, and pull 10 pounds occasionally and five pounds frequently, stand for six hours in an eight-hour workday, walk for four hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  She can occasionally stoop, kneel, and crouch.  She cannot climb, balance, or crawl.  . . . The claimant must avoid exposure to extreme heat and cold and she must avoid fumes, noxious odors, dusts, and poor ventilation, per Occupational Safety & Health Administration (OSHA) limits.

[AR at 17.]  At step four, stating that he "accept[ed] the vocational expert's description of [plaintiff's] past work," the ALJ concluded that plaintiff is capable of performing her past relevant work as a senior marketing executive (Dictionary of Occupational Titles ("DOT") No. 189.117-014), a position he described as sedentary and skilled.  [AR at 22-23.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of August 30, 2010, through October 17, 2014, the date of the decision.  [AR at 32.]

/

/

---

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3]    "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he (1) determined that plaintiff was capable of performing her past relevant work as a senior marketing executive; (2) evaluated plaintiff's subjective symptom statements; and (3) discounted the medical opinion of plaintiff's treating cardiologist, Jeffrey Dell, M.D.  [Joint Stipulation ("JS") at 5, 13, 23.]

As set forth below, the Court agrees with plaintiff, and remands for further proceedings.

## A.   PAST RELEVANT WORK

The ALJ determined that plaintiff could perform her past relevant work as a senior marketing executive as actually and generally performed.  [AR at 22 (citing DOT No. 189.117-014).]  He also specifically stated that he "accept[ed] the vocational expert's description of [plaintiff's] past work," in making that finding.  [AR at 23.]

Plaintiff contends, and defendant concedes, that the ALJ erred (1) when he stated that he relied on the testimony of a vocational expert, as no vocational expert was called to testify; and (2) when he evaluated plaintiff's past relevant work and determined that plaintiff's description of her job duties matched the DOT's description of the position of senior marketing executive at DOT No. 189.117-014. [JS at 7-12, 30-32.] Defendant also states that "[b]ecause no vocational expert testified at the hearing" and "[b]ased . . . on the fact that the *Dictionary* code the ALJ relies on does not match Plaintiff's actual work, this case should be remanded to the ALJ to evaluate Plaintiff's past relevant work properly, and if necessary, to obtain the assistance of a vocational expert." [JS at 32 (citation omitted).]

Remand is warranted on this issue.

## B.   CREDIBILITY

The ALJ noted in his decision that plaintiff alleged "difficulty engaging in physical activity, that she cannot exert herself for more than five minutes, . . . [that] she has difficulty walking (up to five feet), climbing stairs, and lifting (no more than five pounds)[,] [and] also alleges

experiencing fatigue as a side effect to her medication." [AR at 21 (citations omitted).] He stated that plaintiff "alleges greater physical limitations than [he] allowed for" in the RFC, and that he gave her "allegations of disabling symptoms little weight." [AR at 21, 22.] Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 13-23, 38-39.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of her symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); 20 C.F.R. § 404.1529(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 21-22], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 725 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently

specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46).  A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346.  As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient.  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, in discounting plaintiff's credibility, the ALJ specifically found the following:  (1) the record contained no evidence that plaintiff complained of fatigue to her treating doctors; (2) there is no evidence that plaintiff's doctors adjusted her medication in response to any complaint of fatigue; (3) there is no evidence of any difficulties in performing daily activities; (4) plaintiff did not show any difficulty in focusing or concentrating when providing answers to questions or in volunteering information at the hearing; (5) the objective evidence fails to support plaintiff's allegations; (6) plaintiff has a "limited recent history of treatment" with no evidence of surgical procedures since her alleged onset date to treat her cardiac conditions, and no emergency room visits or hospitalizations for her asthma; (7) there is no evidence of physical therapy, pain relief injections, or surgical intervention to treat plaintiff's osteopenia; and (8) plaintiff's daily activities are not consistent with the alleged degree of impairment and suggest that she "has a better physical capacity than she has stated in the record."  [AR at 21-22.]

### 1.    Complaints of Fatigue

Plaintiff argues, and defendant concedes, that the ALJ erred when he found that the record contained no evidence that plaintiff complained of fatigue to her treating doctors.  [JS at 15, 35.]  Defendant argues, however, that the error was harmless because the ALJ provided several legitimate reasons which, "standing alone, were sufficient to support the ALJ's credibility finding."  [JS at 35.]

/

/

Because the Court concludes, as discussed below, that the ALJ failed to provide any specific, clear and convincing reasons for discounting plaintiff's credibility, the error was not harmless.

### 2.    Medication Adjustments

The ALJ found that there was no evidence in the record that plaintiff's doctors adjusted her medication in response to any complaint of fatigue.  [AR at 21.]  Plaintiff notes that despite her repeated complaints of fatigue to her treating physicians, the medical expert, Dr. Grodan, who validated plaintiff's symptom of fatigue [AR at 894], and whose opinion the ALJ gave "greater weight," also opined that plaintiff's treatment was appropriate.  [JS at 18.]  She argues, therefore, that "there is no support for ALJ James D. Goodman's finding that Plaintiff's medications warranted adjustment."  [JS at 18.]  Defendant does not address this reason for discounting plaintiff's credibility.

Because the ALJ erred in finding that the record contained no evidence of plaintiff's fatigue, the ALJ's "related" finding that none of her doctors adjusted her medication in response to any complaints, especially in light of Dr. Grodan's opinion that her treatment was appropriate, is not a specific, clear and convincing reason for discounting plaintiff's credibility.

### 3.    Daily Activities

The ALJ found that there was "no evidence that [plaintiff] has any difficulties in performing her daily activities," and that plaintiff's activities of daily living were not consistent with her alleged degree of impairment:

> The claimant's activities tend to show that she has the ability to perform work.  The claimant reported that she washes dishes, performs housework (including moping [sic] the kitchen floor and cleaning bathrooms), and sweeps the sidewalk in stages.  She also reported that she can carry laundry to her garage and some groceries, and that she goes grocery shopping and drives a car.  At the hearing, the claimant admitted that she drove herself to the hearing[,] parked in a parking lot adjacent to the building in which the hearing was held (a distance of approximately 75 feet), and walked to the building (she did not park in a handicapped parking spot and claimed to have stopped three times walking to the building).  The claimant's activities suggest that the claimant has a better physical capacity than she has stated in the record.

1  [AR at 21, 22 (citations omitted).]

2       An ALJ may discredit testimony when plaintiff reports participation in everyday activities
3  indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. However,
4  "[e]ven where those activities suggest some difficulty functioning, they may be grounds for
5  discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating
6  impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010);
7  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)).

8       Plaintiff contends that the ALJ misrepresented the evidence and did not take into account
9  that she suffers from shortness of breath, is occasionally light-headed and dizzy, and "she cannot
10  do much" because of the shortness of breath.  [JS at 20.]  Here, the ALJ identified daily activities
11  that he found demonstrated a "better physical capacity" than plaintiff stated in the record.  [AR at
12  22.] However, the amount of involvement plaintiff described in those activities was minimal [see,
13  e.g., AR at 176-78 (stating that she does the dishes and other housework "in stages," taking up
14  to two hours to complete the chores; takes a one-hour nap during the day; takes a lot of "sitting
15  down breaks"; shops for groceries two to three times a week and carries only small, light bags of
16  groceries; and can only do activities for five minutes before she experiences shortness of breath
17  and "heart racing").]  The ALJ does not explain how this level of activity describes a person
18  capable of engaging in even basic work activity or how it is inconsistent with plaintiff's subjective
19  symptom testimony.  [AR at 22.]  Additionally, plaintiff's reported level of activity *does* reflect that
20  she has difficulties in performing her daily activities.

21       Thus, these were not specific, clear and convincing reasons for discounting plaintiff's
22  credibility.

23

24       **4.     Objective Evidence**

25       The ALJ also found that the objective evidence does not support plaintiff's subjective
26  symptom allegations.  [AR at 21.]  Specifically, he stated that "there is simply not enough evidence
27  of debilitating impairments to make the allegations readily believable . . . and the objective findings
28  in the record and the findings of Dr. Sedgh [the State Agency consultative examiner] support the

[RFC]."  [Id.]  Plaintiff argues that the ALJ did not say "which objective findings discredit" her testimony, and that Dr. Sedgh set forth no objective findings other than "Cardiovascular examination was irregular."  [JS at 22 (citing AR at 611).]

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's credibility (see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom testimony.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, however, the ALJ reviewed the medical evidence, stated his conclusion that plaintiff's testimony was not credible to the extent it was inconsistent with his RFC assessment, and then stated his finding that the objective findings in the record "[a]s discussed above," also supported his RFC determination and did not support plaintiff's allegations.  [AR at 21.]  As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted).  The "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"  Id. (citation omitted); Brown-Hunter, 806 F.3d at 493.  The ALJ did not identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination.  Brown-Hunter, 806 F.3d at 494.  In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless.  Id. at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified

*which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony") (citing <u>Treichler</u>, 775 F.3d at 1103, <u>Burrell</u>, 775 F.3d at 1138).

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's credibility.

### 5.    Limited and Conservative Treatment History

The ALJ also discounted plaintiff's allegations because other than medications to treat her impairments, she had a "limited recent history of treatment" with respect to her cardiac conditions, no emergency room visits or hospitalizations for her asthma, and no evidence of physical therapy, pain relief injections, or surgical intervention to treat her osteopenia, thus suggesting that she is not as limited as she alleges.  [AR at 21-22.]

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (<u>see</u>, <u>e.g.</u>, <u>Parra v. Astrue</u>, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain."  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999).

However, the ALJ failed to articulate what, if any, other treatment was currently recommended or available for plaintiff's physical impairments.  Although he noted that plaintiff had not undergone any surgical procedures since the alleged onset date for her cardiac condition, or for her osteopenia, he points to no evidence in the record that surgery had been recommended for plaintiff or was warranted for her conditions.  Additionally, the ALJ failed to point to anything in the record to show that any specific treatment, other than the medication plaintiff was receiving, is a standard method for treating individuals with the type of pain or other limitations caused by

plaintiff's physical impairments.  Indeed, the medical expert opined that plaintiff's treatment was "appropriate."  [AR at 893.]

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's credibility.

### 6.   Difficulty in Concentration or Focusing at the Hearing

The ALJ found that plaintiff did not exhibit any difficulty in focusing or concentrating when testifying at the hearing.  [AR at 21.]  Plaintiff counters that her treating cardiologist, Dr. Dell, stated in an RFC questionnaire that plaintiff's cardiac symptoms "often" interfere with attention and concentration.  [JS at 23-24 (citing AR at 865).]

Although they may not form the sole basis for discrediting a claimant's subjective symptom testimony, an ALJ may properly consider his own observations at the hearing as part of the credibility analysis.  Orn v. Astrue, 495 F.3d 625, 639-40 (ALJ's personal observations may be used in "the overall evaluation of the credibility of the individual's statements"); Nyman v. Heckler, 779 F.2d 528, 531 n.1 (9th Cir. 1985) ("The ALJ's observation of [the claimant]'s demeanor was relevant to his credibility and was not offered or taken as a substitute for medical diagnosis.").  However, these observations may not form the sole basis for discrediting that testimony.  Orn, 495 F.3d at 639-40 (citation omitted).

As the Court finds that none of the other reasons given by the ALJ for discounting plaintiff's credibility was legally sufficient, even if this was a specific, clear and convincing reason to discount plaintiff's credibility it would be the *only* such reason, which is not sufficient to support the ALJ's adverse credibility determination.

### 7.   Conclusion

Based on the foregoing, the ALJ's credibility determination was not "sufficiently specific" to allow this Court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit her testimony regarding pain and fatigue.  Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46).  Remand is warranted on this issue.

## C.     TREATING PHYSICIAN

Plaintiff argues that the ALJ failed to properly consider the opinion of her treating cardiologist, Dr. Dell, who treated her for more than six years -- from January 2008 to the time of the hearing.  [JS at 23 (citing AR at 864).]  On July 16, 2014, Dr. Dell completed a Residual Functional Capacity Questionnaire in which he found the following:  plaintiff has marked limitations in physical activity; stress brings on bronchospasm; she is incapable of even a low stress job; her physical problems cause emotional difficulties that in turn contribute to the severity of her symptoms and limitations; her cardiac symptoms interfere with her attention and concentration; she can walk less than a block without having to rest; she can stand or walk less than two hours in an eight-hour workday and sit about five hours in an eight-hour workday with the need to take unscheduled breaks every two hours for about 45 minutes; and she would be absent from work more than three times a month.  [AR at 864-67.]

Observing that Dr. Dell provided no diagnostic or objective evidence to support his "limiting assessment," and his report "contains little to establish a causal connection among the objective findings, if any, and the limitations he opines," the ALJ stated that he gave "greater weight" to the opinion of the medical expert, Dr. Grodan, "as the record is more consistent with the sedentary [RFC] offered by Dr. Grodan."  [AR at 20.]  The ALJ also stated that "Dr. Grodan, a designated medical expert, has superior medical credentials [to the State Agency medical consultants and the consultative examiner, Dr. Sedgh,] in the matters giving rise to the claimant's allegations."  [AR at 19.]

Plaintiff notes that the ALJ is not medically trained and, therefore, not qualified to address whether there is a connection between Dr. Dell's RFC opinion and the medical findings, and the ALJ's rejection of Dr. Dell's opinion "amounts to nothing more than a statement of [the ALJ's] conclusion."  [JS at 27.]  Plaintiff also notes that Dr. Grodan -- whose opinion the ALJ gave "greater weight" -- testified that plaintiff experiences "fatigue," yet the ALJ did not include this limitation in his RFC determination.  [JS at 28.]  Finally, plaintiff notes that although the ALJ found

14

1    that Dr. Dell provided no diagnostic or objective evidence to support his assessment[4] [id.], Dr.

2    Grodan himself merely referred to three different exhibits in the record without stating the clinical

3    findings and the relationship between those findings and the limitations he assessed.[5] [JS at 29.]

4    Plaintiff concludes that because Dr. Grodan found that plaintiff's impairments could reasonably

5    be expected to cause fatigue, and fatigue is the primary reason that plaintiff cannot perform her

6    past relevant work, and there is no evidence that plaintiff "does not suffer the level of fatigue that

7    she described," Dr. Grodan's opinion that plaintiff suffers from fatigue "should be credited," thus

8    leaving plaintiff "unable to perform her past relevant work."  [JS at 30.]

9        Defendant argues that the ALJ "must provide good reasons supported by substantial

10    evidence for rejecting a treating source's opinion," and that the ALJ did so in rejecting Dr. Dell's

11    opinion in favor of Dr. Grodan's opinion.  [JS at 36 (citing 20 C.F.R. § 404.1527(c)(2)).]  Simply

12    providing a "good reason," however, is not the correct legal standard.  An "ALJ may only reject a

13    treating or examining physician's uncontradicted medical opinion based on clear and convincing

14    reasons."  Carmickle, 533 F.3d at 1164 (citation and quotation marks omitted); Widmark v.

15    Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).  "Where such an opinion is contradicted, however,

16    it may be rejected for *specific and legitimate reasons* that are supported by substantial evidence

17    in the record."  Carmickle, 533 F.3d at 1164 (emphasis added) (citation and quotation marks

18    omitted); Ryan, 528 F.3d at 1198; Ghanim, 763 F.3d at 1160-61; Garrison v. Colvin, 759 F.3d 995,

19    1012 (9th Cir. 2014).  The ALJ can meet the requisite specific and legitimate standard "by setting

20    out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

21    interpretation thereof, and making findings."  Reddick, 157 F.3d at 725.  The ALJ "must set forth

22    his own interpretations and explain why they, rather than the [treating or examining] doctors', are

23    correct."  Id.

24    /

25

26    [4]    The Court notes that Dr. Dell did indicate that he believes that plaintiff is incapable of an
even low stress job because of her "borderline lung function."  [AR at 865.]

27

28    [5]    The Court notes that two of the three exhibits referenced by Dr. Grodan contain Dr. Dell's
treating records, i.e., AR Exhibits 1F and 7F (Exhibit 3F, also referred to, is Dr. Sedgh's report).

1   The Court finds that the ALJ did not provide specific and legitimate reasons supported by

2   substantial evidence of record for rejecting the opinions of plaintiff's cardiologist in favor of the

3   opinions of the non-examining consultant.  Remand is warranted on this issue.

4

5   **VI.**

6   **REMAND FOR FURTHER PROCEEDINGS**

7   The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan,

8   888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further

9   proceedings, or where the record has been fully developed, it is appropriate to exercise this

10   discretion to direct an immediate award of benefits.  See Lingenfelter, 504 F.3d at 1041; Benecke

11   v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must

12   be resolved before a determination can be made, and it is not clear from the record that the ALJ

13   would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is

14   appropriate.  See Benecke, 379 F.3d at 593-96.  Plaintiff requests that the Court remand for

15   payment of benefits, but if the Court decides to remand for further proceedings, that it then order

16   a hearing by a different ALJ that will be held within 120 days of the date of this Order, and that a

17   decision be issued 30 days following the hearing.  [JS at 41-47.]

18   In this case, there are outstanding issues that must be resolved before a final determination

19   can be made.  In an effort to expedite these proceedings and to avoid any confusion or

20   misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

21   proceedings.  First, because the ALJ failed to provide specific and legitimate reasons for

22   discounting the opinions of Dr. Dell and for giving the opinions of Dr. Grodan greater weight, the

23   ALJ on remand shall reassess the medical opinions of record.  In assessing the medical opinion

24   evidence of all of the doctors, the ALJ must explain the weight afforded to each opinion and

25   provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects,

26   including a legally sufficient explanation for crediting one doctor's opinion over any of the others.

27   Second, because the ALJ failed to provide specific, clear and convincing reasons, supported by

28   substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony,

the ALJ on remand shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.   Finally, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a vocational expert if necessary, whether plaintiff is capable of performing any of her past relevant work.  If she is not so capable, then the ALJ should proceed to step five and determine, with the assistance of a vocational expert if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

Plaintiff's request that the new hearing be held before a different ALJ and that time limits be imposed on the hearing and decision date is **denied**.


### VII.

### CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  December 11, 2015

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE